IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| FOREST GLEN, L.L.C., an Alabama Limited Liability Company, and TIMBERCREEK, L.L.C., an Alabama Limited Liability Company, ) ) ) ) ) ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: 2:07-cv-00836-WKW |
| ) | |
| CITY OF MONTGOMERY and THE WATER WORKS & SANITARY SEWER BOARD OF THE CITY OF MONTGOMERY, ) ) ) ) ) | |
| Defendants. ) | |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
THE WATER WORKS & SANITARY SEWER BOARD OF
THE CITY OF MONTGOMERY**

The Water Works & Sanitary Sewer Board of the City of Montgomery (the "Board") respectfully submits its Brief in Support of its Motion for Summary Judgment filed contemporaneously herewith.

**I.    INTRODUCTION.**

On August 8th, 2007, Forest Glen, L.L.C. ("Forest Glen") and Timbercreek, L.L.C. ("Timbercreek") (collectively the "Plaintiffs") filed their Complaint against the Board and the City of Montgomery alleging reckless fraud, violations of the Due Process and Equal Protection Clauses of the United States Constitution, and violation of the Access Management Plan adopted by the City of Montgomery's Planning Commission. The Plaintiffs contend that the Board and the City required

them to extend a service road and sewer line to the end of their property line, and represented to them that other property owners would likewise be required to extend their service road and sewer lines. However, after the Plaintiffs extended the service road and sewer line to the end of their property line, the Board and the City allegedly failed to require other landowners to do the same.

The Board is entitled to summary judgment on all claims alleged by the Plaintiffs.[1] First, Plaintiffs' allegations are barred by the appropriate statute of limitations. Second, to the extent that the statute of limitations somehow does not apply to Plaintiffs' allegations, the Plaintiffs have failed to prove essential elements of their claims. As to their reckless fraud claim, the Plaintiffs have failed to identify a false representation made by the Board. Moreover, they have not been damaged by any alleged fraud perpetrated by the Board. As to their Equal Protection claim, the Plaintiffs have failed to identify any similarly situated developer, and have failed to establish the Board's policy is anything other than rationally related to a governmental interest. Finally, as to their Due Process claim, they have similarly failed to rebut that the Board's policy is rationally

---

[1] To the extent that the Plaintiffs argue that the Board required them to extend the service road in violation of the Access Management Plan, their argument is misplaced. The Board cannot find nor have the Plaintiffs cited any authority wherein the Board can require an entity to extend a road at the Board's request. Moreover, the Access Management Plan does not address the placement or extension of sewer lines. Because the Board does not have the authority to require the Plaintiffs to extend their service road and/or sewer line to the end of their property line by application of the Access Management Plan, any and all allegations against the Board for the same are due to be dismissed, specifically any allegation that the Board violated the Access Management Plan.

related to a governmental interest, and have failed to identify any protected interest. Summary Judgment is therefore due to be granted to the Board.

## II. NARRATIVE SUMMARY OF UNDISPUTED FACTS

At the time of the issues surrounding the Complaint, Timbercreek was a limited liability company, and had one member with a one hundred percent ownership interest, i.e. Merrill Ingram ("Mr. Ingram"). (Ingram's Dep. 9:7-8.) Forest Glen was a limited liability company, and had three members, i.e. Phyllis Ingram, Lee Bullock, and Mr. Ingram. (*Id.* 9:9-12.) Mr. Ingram has a thirty-three and one-third interest in Forest Glen. (*Id.* 9:1-3.)

Greg Gillian ("Mr. Gillian"), a licensed professional engineer employed by Larry Speaks & Associates, was retained by Forest Glen, Timbercreek, and/or Mr. Ingram to perform "[s]urveying, engineering design - - the whole nine yards" for a property development on Chantilly Parkway. (Gillian's Dep. 7:18-23; 8:1-14.) Mr. Gillian prepared and submitted the plat for the Chantilly development to the City of Montgomery's Planning Commission, and represented the interests of Forest Glen, Timbercreek, and/or Mr. Ingram at the commission meetings. (*Id.* 8:15-21.) On March 19th, 2003, Mr. Gillian submitted Chantilly Place Plat No. 1 to the Board for approval. (Daniel Aff. p. 1.) On October 3rd, 2003, Mr. Gillian received correspondence from Keverly Daniel ("Ms. Daniel"), then Graduate Engineer for the Board, with comments and revisions to Chantilly Place Plat No. 1. (*Id.*) One of the revisions to the Plat required Mr. Gillian to extend the sewer line to the end of the property line. (*Id.*)

On November 20th, 2003, Wesley Fulmer, employed by Speaks & Associates and working with Mr. Gillian, submitted Chantilly Place East Plat No. 1 to the Board for review and approval. (Daniel Aff. p. 2.) On December 10th, 2003, Mr. Fulmer received correspondence from Ms. Daniel with comments and revisions to Chantilly Place East Plat No. 1. (*Id.*) Similar to Chantilly Place Plat No. 1, one of the revisions to the East Plat required Mr. Fulmer to extend the sewer line to the end of the property line. (*Id.*) On May 13th, 2004, the Board approved the installation of the Water and/or Sanitary Sewer facilities to serve Chantilly Place Plat No. 1. (*Id.*)

On August 15th, 2003, Forest Glen entered into a Purchase and Sale Agreement with Alan and/or Ann Bush (the "Bushes") for the purchase of one hundred thousand square feet of the Chantilly development. (Bush's Dep. 9:1-3; 22-23; 10:1-23; 11:1-14.) The Bushes paid two hundred forty-five thousand three hundred and twenty dollars ($245,320.00) for the lot. (*Id.* 8:9-13.) Forest Glen and the Bushes closed the sale on August 22nd, 2003. (*Id.* 20:3-11.) The Bushes never applied for a building permit for the property during their ownership nor submitted a development plan to the City or the Board. (*Id.* 15:8-11; 51:23; 52:1-3.) Buddy Morgan has similarly testified that Bush never submitted a development plan for the property. (Morgan Aff. p. 2.) Moreover, Alan Bush testified that the property was advantageous for him to buy because Mr. Ingram had failed to extend the service road and sewer line to the property line. (Bush's Dep. 28:3-19.) Mr. Bush testified that he thought he could "work out a deal" with

"the next guy down" to use the road, water, and sewer. (*Id.* 28:3-19; 29:10-14; 49:12-14.)

A few months after selling the property to the Bushes, Mr. Ingram called Alan Bush and requested that Bush give him the property, so that he could "run the road right out the end of the property." (Bush Dep. 16:3-18.) However, Bush rejected Mr. Ingram's proposal. (*Id.* 16:3-18.) Mr. Ingram then suggested that he buy only the piece of the property where the road would run. (*Id.* 16:3-18.) Bush similarly rejected Mr. Ingram's proposal. (*Id.*) Bush, after researching the property, later agreed to sell the entire property to Mr. Ingram (*Id.* 24:15-23; 25:1-2.)

On February 5th, 2004, the Bushes and Timbercreek entered into a Purchase and Sale Agreement for the lot. (Exhibit F, Purchase and Sale Agreement.) Mr. Ingram has testified that Timbercreek bought the property because it had more funds than Forest Glen at the time, and the managing partner of Forest Glen, Phyllis Ingram (Mr. Ingram's wife) "is a lot harder business person to deal with than I am." (Ingram's Dep. 41:13-23; 42:1-10.) Mr. Ingram has testified that Timbercreek made a profit by selling the property to Norris Watson. (*Id.* 78:23; 79:1-9.)   Mr. Ingram contends that Mr. Gillian represented to him that the Board was going to require the adjoining property owner to extend the sewer line. (*Id.* 52:11-17.) However, Mr. Gillian has testified that he could not remember any conversations with Ms. Daniel or anyone at the Board regarding extending the sewer line for the collective Plats or any other development, i.e. the

development east of Chantilly Place East Plat No. 1. (Gillian's Dep. 23:15-20; 26:5-21.) Moreover, Mr. Ingram has testified that he is not aware of any developments in Montgomery where the developer did not have to extend the sewer line to the property line. (Ingram's Dep. 53:12-17; 58:15-19.)

Buddy Morgan, General Manager for the Board, has testified that the Board has a "long standing practice in similar circumstances of requiring the developer the extend the sewer line to the adjoining upstream property owner. Without this requirement, developers could have the sewer line short of the property line. The upstream property developer would then have to negotiate an easement across this property." (Morgan Aff. p. 2.)

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). Once the movant demonstrates there is no genuine issue as to any material fact, the burden shifts to the nonmovant who "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

### IV.	ARGUMENT

I.	**THE BOARD IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' ALLEGATIONS OF RECKLESS FRAUD AND VIOLATIONS OF THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE UNITED STATES CONSTITUTION BECAUSE THE STATUTE OF LIMITATIONS HAS RUN ON ALL OF PLAINTIFFS' CLAIMS**

Plaintiffs filed suit against the Defendants for reckless fraud and violations of the Due Process and Equal Protection Clauses of the United States Constitution on August 8th, 2007. The crux of Plaintiffs' Complaint is that the Board required them to extend their sewer line and represented that the adjoining landowner would similarly be required to extend its sewer line to the property line. Plaintiffs' contend that, although having been told by the Board of the requirement, the adjoining landowner was never required to extend its sewer line to the property line. The Board is entitled to summary judgment on Plaintiffs' Complaint because the statute of limitations has run on all claims.

### A.	The statute of limitations has run on Plaintiffs' fraud claim because they failed to bring the action within two years after being privy to facts that would provoke inquiry in the mind of a reasonable person

"In Alabama, any fraud claim must be brought within two years of the accrual of the claim." *Auto-Owners Ins. Co. v. Abston*, 822 So. 2d 1187, 1194 (Ala. 2001) (citing Ala. Code § 6-2-38(l) (1975)). "[T]he limitations period begins to run when the plaintiff was privy to facts which would 'provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud.'" *Auto-Owners Ins. Co.*, 822 So. 2d at 1195 (citing *Willcutt*

*v. Union Oil Co.*, 432 So. 2d 1217, 1219 (Ala. 1983)). The Plaintiffs were privy to facts that would provoke inquiry in the mind of a reasonable person, at the earliest, on October 3rd, 2003, and December 10th, 2003.

On October 3rd, 2003, Ms. Daniel sent Mr. Gillian a letter that required the Plaintiffs to extend the sewer line of Chantilly Place Plat No. 1 to the property line of the development. On December 10th, 2003, Ms. Daniel sent a similar letter to Wes Fulmer advising him that the sewer line for Chantilly Place East Plat No. 1 must be extended to the property line. At that point in time, the Plaintiffs would have been privy to facts that would provoke inquiry in the mind of a reasonable person. However, Mr. Gillian and Mr. Ingram failed to question the alleged requirement as applied to the adjoining property owner, or as applied to the property. Mr. Gillian and Mr. Ingram have testified that, after receiving the letters from Ms. Daniel, they never discussed the alleged requirement that the sewer line be extended for the adjoining property owner with the Board, and they never had *any* conversation with the adjoining property owner regarding whether that property owner would be required to extend the sewer line. (Gillian's Dep. 23:14-20; Ingram's Dep. 51:14-21.) Objectively, the Plaintiffs fraud action is barred by application of the statute of limitations because they were privy to facts that would provoke inquiry in the mind of a reasonable person, and they failed to inquire as to the adjoining property owner's situation, and their own situation. Moreover, they waited almost two years after the statute of limitations ran to file suit.

8

On January 24th, 2005, the Plaintiffs submitted "As Built Plans" to the Board, which plans indicate that the sewer line was in the ground. (Daniel Aff. p. 2.) The Plaintiffs had an arguable complete cause of action on January 24th, 2005, when they submitted the "As Built Plans." They were on notice of the alleged false representation by letters dated October 3rd, 2003, and December 10th, 2003, they reasonably relied on the representation by extending the sewer line to their property line, and, for the sake of argument, were damaged. However, Plaintiffs filed suit on August 8th, 2007, a full six months after their cause of action accrued. Because the Plaintiffs failed to file suit within the statute of limitations period, the Board is entitled to summary judgment on Plaintiffs' reckless fraud count.

**B.** **The statute of limitations has run on Plaintiffs' allegations that the Board violated the Due Process and Equal Protection Clauses of the United States Constitution**

"In Alabama, there is a two-year statute of limitations for claims brought under the Equal Protection Clause of the Fourteenth Amendment, as enforced through § 1983." *Garrison v. Montgomery County Bd. of Educ.*, Civ.A.2:05CV549-WHA, 2006 WL 625876, * 9 (M.D. Ala. Mar. 10, 2006). Moreover, there is a similar two-year statute of limitations for claims brought under the Due Process Clause of the Fourteenth Amendment. *See Lufkin v. McCallum*, 956 F.2d 1104, 1106 (11th Cir. 1992) (noting that the statute of limitations for Section 1983 suits in Alabama is two years).

9

Plaintiffs' Due Process and Equal Protection claims accrued when the Board notified Mr. Gillian that the sewer line would have to be extended to the property line. At that time, i.e. October 3rd, 2003, and December 10th, 2003, Plaintiffs had an arguable complete cause of action, i.e. they were required by the Board to extend the sewer line to the property line, while other allegedly similarly situated developers were not required to extend their line. Plaintiffs, however, filed suit on August 7th, 2007, almost two years after the statute of limitations ran for their claims. As such, the Board is entitled to summary judgment on the Plaintiffs' claims of Due Process and Equal Protection violations.

## II.  THE BOARD IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' ALLEGATIONS THAT IT VIOLATED THEIR DUE PROCESS AND EQUAL PROTECTION RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION[2]

The Plaintiffs contend that the Board's requirement that they extend the sewer line to their property line violates their Equal Protection and Due Process rights under the Fourteenth Amendment to the United States Constitution. From the text of their Complaint, it is impossible to determine whether the Plaintiffs allege a violation of substantive and/or procedural due process. However, their claims summarily fail by application of either procedural and substantive due

---

[2]  The Plaintiffs have alleged a violation of the Fourteenth Amendment in their Complaint. (See Compl. Count II.) However, they have failed to properly bring their alleged violation through the vehicle of Section 1983. The Defendants aver that Plaintiffs' Count II is procedurally defective and should be dismissed. *See Mitchum v. Foster*, 407 U.S. 225, 238 (1972) (noting that Section 1983 was enacted to enforce the provisions of the Fourteenth Amendment).

10

process, and equal protection law to the facts of this case.

### A. Summary judgment is due to be granted to the Board on Plaintiffs' Substantive Due Process claim because the Board's decision was a non-legislative act, and the Board's policy is rationally related to a governmental interest[3]

It is important to note that the Plaintiffs' contentions are essentially that they were required to extend the sewer line to their property line.[4] First, in order to prevail on their substantive due process claim, the Plaintiffs must show a vested property interest in Board approval of their development plans. *See DiMassimo v. City of Clearwater*, 805 F.2d 1536, 1539 (11th Cir. 1989) (noting that plaintiffs must show a property interest in order to prevail on a substantive due process claim). Further, in order to have a protected property interest, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). The Plaintiffs have not established a property right in approval of their plans. The approval by the Board is merely an "unilateral expectation" rather than a legitimate interest of the Plaintiffs. *See Sylvia Development Corp. v. Calvert County*,

---

[3] The rational basis test is the same for claims under both the Equal Protection and Substantive Due Process Clauses of the Fourteenth Amendment. *See In re Wood*, 866 F.2d 1367, 1371 (11th Cir. 1989). Because the policy is rationally related to a governmental interest, the Board is entitled to summary judgment on the Equal Protection allegation of Plaintiffs' Complaint.

[4] It is unclear whether the Plaintiffs are claiming that the Board's policy or the Board's decision contributed to their alleged injury.

11

*Md.*, 48 F.3d 810, 826 (4th Cir. 1995) (noting that a developer does not have a legitimate property interest in a zoning application.)

To the extent that the Plaintiffs have sufficiently alleged a property interest in approval of the development plans by the Board, "[i]t is well established that land use rights, as property rights generally, are state-created rights." *DeKalb Stone, Inc. v. County of Dekalb, Ga.*, 106 F.3d 956, 959 (11th Cir. 1997). Moreover, "areas in which substantive rights are created only by state law . . . are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.'" *Lewis v. Brown*, 409 F.3d 1271, 1272-73 (11th Cir. 2005) (citing *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994)). Further, "a claim based on a violation of a non-legislative act cannot support a substantive due process claim." *Bates v. Islamorada, Village of Islands*, 243 Fed.Appx. 494, 496 (11th Cir. June 19, 2007). The Board's *decision* in requiring the Plaintiffs to extend the sewer line to their property line before approval of their plans was a non-legislative act, as the result "appl[ied] to a limited number of persons[,]" i.e. to the Plaintiffs. *Lewis*, 409 F.3d 1273. Moreover, the Board did nothing other than apply their *existing policy* to the Plaintiffs.

To the extent that the Plaintiffs argue that the Board's *policy* violated their substantive due process rights, their argument similarly fails. "Substantive due process challenges that do not implicate fundamental rights are reviewed under the highly deferential 'rational basis' standard." *Schwartz v. Kogan*, 132 F.3d

1387, 1390 (11th Cir. 1998). "In order to satisfy substantive due process requirements, the legislation must be rationally related to its purpose and must not be arbitrary or discriminatory." *Silver v. Baggiano*, 804 F.2d 1211, 1218 (11th Cir. 1986). "The rational basis test is not a rigorous standard . . . . The test is generally easily met . . . . The task is to determine if any set of facts may be reasonably conceived to justify [the policy.] Even if the court is convinced that the political branch has made an improvident, ill-advised or unnecessary decision, it must uphold the act if it bears a rational relation to a legitimate government purpose." *TRM, Inc. v. United States*, 52 F.3d 941, 945-46 (11th Cir. 1995)

Buddy Morgan, the General Manager for the Board, has testified that the purpose of the Board's policy in requiring developers to extend the sewer line to the adjoining upstream property owner is to prevent the upstream property owner from having to "negotiate an easement" with the other developer to attach to the sewer line. (Morgan Aff. p. 2.) Alan Bush, noting that the sewer line of the property that he bought from Forest Glen did not extend to the property line, testified that one of the main reasons he had interest in the property was to work a deal with the adjoining land owner for use of the sewer. The Board's policy applies to deter individuals like Mr. Bush from taking advantage of other landowners. *See Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926) (noting that a defendant's actions must be "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare."). Summary Judgment is due to be granted to the Board because its policy is

rationally related to a governmental function, i.e. morals and/or general welfare of the public.

>    **B.    Summary Judgment is due to be granted to the Board on Plaintiffs' Equal Protection claim for selective enforcement because they have not identified any similarly situated development**

To prevail on a selective enforcement claim under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, "Plaintiffs must show (1) that they were treated differently from other similarly situated individuals, and (2) that Defendant[s] unequally applied a facially neutral ordinance for the purpose of discriminating against Plaintiffs." *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006). The Plaintiffs' property in comparison to a similarly situated property "must be *prima facie identical* in all relevant respects." *Id.* at 1314.

The Plaintiffs' Equal Protection claim fails because Mr. Ingram has testified that he is not aware of any developments in Montgomery where the developer did not have to extend the sewer line to the property line. (Ingram Dep. 53:12-17; 58:15-19.) Because the Plaintiffs cannot identify any similarly situated project and/or development, summary judgment should be granted to the Board.

>    **C.    Summary judgment is due to be granted to the Board on the Plaintiffs' procedural due process claim because they have not established a constitutionally-protected liberty or property interest**

"[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or

property interest; (2) state action; and (3) constitutionally-inadequate process." Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003). Plaintiffs have failed to establish that they have a constitutionally-protected liberty or property interest in approval of their development plans. As discussed *supra*, the Plaintiffs had no property interest in the approval of their development plans by the Board, and therefore have no procedural due process claim against the Board. At best, the Plaintiffs had an unilateral expectation that their plans would be approved by the Board.

**III.   SUMMARY JUDGMENT IS DUE TO BE GRANTED TO THE BOARD ON PLAINTIFFS' CLAIM OF RECKLESS FRAUD BECAUSE THERE WAS NO FALSE REPRESENTATION, AND EVEN IF THERE WAS A FALSE REPRESENTATION, THE PLAINTIFFS WERE NOT DAMAGED**

"To show fraud, plaintiffs must demonstrate that '(1) the defendants made a false representation; (2) concerning a material fact; (3) upon which the plaintiffs reasonably relied; and (4) as a proximate result of such reliance, the plaintiffs suffered damages." *Kelly v. UHC Management Co., Inc.*, 967 F.Supp. 1240, 1255 (N.D. Ala. 1997) (citing *Intercorp., Inc. v. Pennzoil Co.*, 877 F.2d 1524, 1534 (11th Cir. 1989)). "The misrepresentation is actionable if it was made intentionally, recklessly or innocently by mistake." *Kelly*, 967 F.Supp. at 1255. Plaintiffs allege that the Board falsely represented to them that the adjoining land owner would be required to extend its sewer line to the median crossover on Chantilly Parkway. (See Compl. Count I. ¶ 10.) The Plaintiffs' argument fails for a variety of reasons.

First, there is no evidence that the Board made any false representation to the Plaintiffs regarding the status of the adjoining landowner's sewer line. Mr. Ingram testified that he was told by Mr. Gillian that the Board would require the adjoining landowner to extend the sewer line. (Ingram's Dep. 51:14-23; 52:1-10.) However, Mr. Gillian testified that he recalled no such conversations with anyone at the Board. (Gillian's Dep. 23:15-20; 26:5-21.) Moreover, Mr. Gillian testified that he could not recall ever discussing the adjoining property with the Board. (Gillian Dep. 23:14-20.) Second, *assuming arguendo* that a representation was made by the Board, it cannot be considered false. The adjoining land owner has not submitted any plan for development as to his property. If, and when, the adjoining land owner submits a development plan, he will be subject to the same policy as the Plaintiffs, if he is similarly situated to the Plaintiffs.

Finally, any alleged misrepresentation by the Board did not result in damage to the Plaintiffs. The Board is bewildered as to the Plaintiffs calculation of damages. Plaintiffs ask for "all monies [they] were required to expend in the . . . extension of . . . sewer line to its property borders as well as the value of Plaintiffs' frontage property which it was forced to use to effect said construction and extension as well as the cost of having to repurchase a lot when Defendants refused to issue said lot owner a building permit until such extension occurred." (Compl. Count I, Prayer for Relief.) First, Forest Glen was not required to extend the sewer line, as Mr. Ingram has testified that Timbercreek paid for the extension. (Ingram's Dep. 76:3-8.) From the facts, Forest Glen has not

16

established that it has been damaged. Second, the extension of the sewer line did not require use of any frontage along Chantilly Parkway as the sewer easement was already in place. Third, the extension is approximately 100-140 feet at a cost of about $5,290.00. (Gillian's Dep. 28:17-22.) Finally, as to the repurchase of the lot, Forest Glen initially bought the property that Mr. Bush owned. Timbercreek, though, repurchased the property and made a profit after selling it to Norris Watson. As such, Timbercreek recovered any and all monies it spent in extending the sewer line and in repurchasing the lot by the subsequent sale. Timbercreek is hard pressed to now claim damages after it sold a particular valuable piece of property for a profit.

## V.   CONCLUSION

For the aforementioned reasons, the Board is due summary judgment on all of Plaintiffs' claims.

Respectfully submitted,

/s/   *Randall Morgan*
RANDALL MORGAN [MOR037]
Attorney for Defendant Montgomery Water
Works and Sanitary Sewer Board

OF COUNSEL:
Hill, Hill, Carter, Franco, Cole & Black, P.C.
425 South Perry Street
Montgomery, Alabama 36104
334-834-7600

**CERTIFICATE OF SERVICE**

  I hereby certify that on this the 16th day of June, 2008, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to the following via email::

H. Dean Mooty, Jr., Esq.
Mooty & Associates, P.C.
600 Clay Street
Montgomery, Alabama 36104

Wallace D. Mills, Esq.
City of Montgomery
103 North Perry Street
Montgomery, Alabama 26104

             /s/ *Randall Morgan*
             OF COUNSEL