IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | |
|---|---|
| FOREST GLEN, L.L.C. and TIMBER CREEK, L.L.C., <br><br> Plaintiff, <br> vs. <br><br> CITY OF MONTGOMERY, and THE WATER WORKS AND SANITARY SEWER BOARD FOR THE CITY OF MONTGOMERY, <br> Defendant | Case No.: 2:07-CV-836 <br><br> **CITY OF MONTGOMERY'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |

COMES NOW, the City of Montgomery, by and through undersigned counsel, and in reply to Plaintiffs' Response in Opposition to the City of Montgomery's Motion for Summary Judgment, says as follows:

**I. Accrual of Claims**

Plaintiffs' first, and most substantive argument, revolves around the time at which their causes of action accrued.

**A.     Fraud**

With respect to the state law claim of fraud, The Alabama Supreme Court has recognized that "[i]n actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." Gilmore v. M&B Realty Co., L.L.C., 895 So.2d 200, 209 (Ala.2004) *citing* §6-2-3 Ala. Code (1975).

Plaintiffs' assert that it was the placement of a billboard on the neighboring property which first alerted them of their claim, and not the letter from Stuart Manson advising them that they had to lengthen their service road. The Gilmore Court, however, said that,

> [T]he limitations period begins to run when the plaintiff was privy to facts which would "provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud." ... see also Jefferson County Truck Growers Ass'n v. Tanner, 341 So.2d 485, 488 ('Fraud is deemed to have been discovered when it ought to have been discovered. It is sufficient to begin the running of the statute of limitations that facts were known that would put a reasonable mind on notice that facts to support a claim of fraud might be discovered upon inquiry.').

Gilmore, 895 So.2d at 209 (Ala.2004), Auto-Owners Ins. Co. v. Abston, 822 So.2d 1187, 1195 (Ala.2001) *and* Jefferson County Truck Growers Association v. Tanner, 341 So.2d 485, 488 (Ala.1977).

Regardless of the placement of the billboard, the fraud—assuming that one ever existed—should have been discovered at the point at which Plaintiffs' were told they would have to lengthen their access road to comply with the interconnectivity requirements of the Traffic Access Management Plan. At the heart of their complaint is the assertion that they should not have been made to lengthen the access road. Their argument for damages shows this most clearly; they argue the cost of constructing *their* road as the measure of their damages. If the alleged fraud were truly the failure to require the *neighbor* to build a road, the damages would not be measured by the cost of building their *own* road, but by some other, more ethereal, measure focusing on the reduced accessibility to the subject site, or perhaps a lessening of the plaintiffs' property value arising out of the reduced accessibility.

The January 20, 2004 letter from Stuart Manson regarding the necessity of extending the service road was sufficient to "provoke inquiry" in the minds of the plaintiffs as to whether and

to what extent they were required by the subdivision regulation to build the road. And "if followed up" by a simple reading of the Traffic Access Management Plan would have revealed whether and to what extent the *neighboring landowner* was required to extend that road.

### B. 42 U.S.C. §1983

Similarly, the law in this Circuit regarding accrual of §1983 claims is that "'the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" McNair v. Allen, 515 F.3d 1168 (11th Cir.2008) (*citing* Mullinax v. McElhenney, 817 F.2d 711, 716 (11th Cir.1987)). Here, the plaintiffs seek to convince the Court that he should be allowed to rely blindly upon the alleged assertion that the road would be continued beyond their property line. A "person with a reasonably prudent regard for his rights", however, who is submitting subdivision plans for approval by a government body—plans which are approved or denied based upon whether they comply with the published subdivision regulations—would at least read the subdivision regulation at issue. Such a reading would have revealed whether and to what extent the neighboring landowner would be required to continue the subject access road.

If, therefore, the City had the authority to allow the neighboring landowner to develop its property without extending the road—as Plaintiffs' allege they have done—the plaintiff would have discovered that fact after a reading of the Traffic Access Management Plan. It is at that point, then, that Plaintiffs would have known that there was a misrepresentation.[1]

Moreover, as will be discussed herein below, the placement of the billboard has no effect on the requirements of building interconnecting roads. As such, no cause of action can begin its accrual upon the erection thereof.

---

[1] The assumption that there was a misrepresentation is made for the purposes of argument only. The Traffic Access Management Plan is clear that the adjoining landowner would have had to connect to Plaintiffs' development in order to get a subdivision plan approved, regardless of the placement of a billboard.

3

## II.   Reasonable Reliance & False Assumptions

The impetus behind Plaintiffs' second argument rests on the allegation that the "City had no intention of requiring the adjoining landowner" to extend the service road. (Plaintiffs' Response, Doc. No. 23)  Plaintiffs attempt to support that argument on the conclusory allegation that the placement of a billboard on the neighboring property somehow signifies that the City had no intention of requiring the street to be carried on by the adjoining landowner.

Aside from the fact that both of these allegations are conclusory, and that they have failed to produce any evidence upon which to support them[2], Plaintiffs will have the Court believe that the placement of that billboard forestalls or somehow prohibits the Montgomery Planning Commission from requiring the extension of the service road when and if the adjoining property is developed—another assumption for which Plaintiffs can provide no basis.  To the contrary, billboards are permitted by the Planning and Development Department of the City of Montgomery—an organization which is separate and apart from the Montgomery Planning Commission—and they are done so pursuant to a separate city ordinance, without regard to the platting requirements of the Montgomery Planning Commission. (Exhibit A, Affidavit of Ken Groves, Director Montgomery Planning Department).  The billboard, in essence, is not an obstacle to the interconnectivity requirements of the Traffic Access Management Plan, and its presence does not, in any fashion, absolve the neighboring landowner of those requirements. (Exhibit A).  If the neighboring landowner had applied for approval of a subdivision plat he/she would have, without question, been required to connect to Mr. Ingram's property at the point at

---

[2] Conclusory allegations cannot interpose genuine issues of material fact into the litigation so as to preclude entry of summary judgment. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

which the access road stubs out, regardless of the location of the billboard. (Ken Groves). Basically, the owner would have been required to move the billboard.

These make up just the first set of several false assumptions upon which Plaintiffs base their arguments. The fact is that Plaintiffs can point to nothing beyond assumption and conclusory allegation to support their assertion that the City of Montgomery had no intention of requiring the extension of the service road.

The most prominent assumption is that the letter from Stuart Manson represented the City's refusal to approve the plat. The argument assumes that the "City of Montgomery"—for whom Stuart Manson works—has some authority to approve or disapprove plats; it does not. The Montgomery Planning Commission, a Commission set up under the authority granted directly by the Alabama Legislature in §11-52-1 et. seq. Ala. Code (1975), is separate and apart from the City of Montgomery and holds the sole authority for approving or disapproving plats and subdivision regulations. §11-52-36 Ala. Code (1975) (Exhibit B). That power is derived directly from the Alabama Legislature and not the City of Montgomery. The only link between the two entities is the authority vested in the City Council of the City of Montgomery to set up the Commission by ordinance and to appoint the Commission members. §11-52-3 Ala. Code (1975) (Exhibit C). The Planning Commission takes no direction from the City of Montgomery or the Planning Department for the City of Montgomery on matters of subdivision regulation.[3] Moreover, Stuart Manson is an employee of the City of Montgomery and cannot speak for or otherwise bind the Montgomery Planning Commission.

It is a fallacy, therefore, to argue that Stuart Manson's letter does or can constitute a disapproval of a plat. His letter was merely advisory; a service provided by the City of

---

[3] The Planning Commission also serves in an advisory capacity to the City Council on zoning issues, but enjoys exclusive jurisdiction over subdivision regulation and plat approval. §11-52-31, §11-52-36 Ala. Code (1975).

5

Montgomery meant to aid the developer in discovering potential problems with their plat before the application is made to the Planning Commission.

From the false assumption that Manson's letter was a disapproval of their plat, Plaintiffs then draw the conclusion that they had no choice, but to build the road. A misunderstanding of the basic process for approving plats is obvious. The developer, in this case, simply failed to explore any further to ascertain what his rights were and who had the ultimate authority to approve his plat. The power granted to the municipal planning commission under §11-52-31 to adopt regulations governing "the subdivision of land within its jurisdiction" means that such a commission is also thereby invested with the power to change those regulations. §11-52-31 Ala. Code (1975) (Exhibit D). Ultimately, the Montgomery Planning Commission had the authority to approve Plaintiffs' plan despite its shortcomings, but it was never submitted to them in its original form.

"An essential element of any fraud claim is that the plaintiff must have reasonably relied on the alleged misrepresentation." Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1160 (Ala.2003). "If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover." Torres v. State Farm Fire & Casualty Co., 438 So.2d 757, 759 (Ala.1983). "'If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, *volunti non fit injuria*.'" Id. *citing* Munroe v. Pritchett, 16 Ala. 785, 789 (Ala.1849).

Here again, with the exercise of due care, Plaintiffs could have discovered the true facts; they are published and available freely in printed form to the public. It was not reasonable that they blindly relied on Manson's letter, and it was not reasonable that they allowed their

6

assumption to go unverified—the assumption being that Manson's letter, somehow, constituted a disapproval of their plat.

Plaintiffs had at least one other alternative to applying to the Planning Commission for approval without the interconnectivity requirements: they could have submitted a plat which did not include property of which they were no longer the owners. In other words, had they not included "Lot 1"—which had already been sold to Alan Bush—their plan would have been in compliance with the Traffic Access Management Plan because the road would have been carried to their boundary. Perhaps the submission which included "Lot 1" was an attempt to hide the fact that Mr. Ingram had illegally transferred title to the property without subdivision approval. Or, perhaps it was an effort to avoid a fraud lawsuit against them by Mr. Bush—because the requirement for connecting the two developments would have then fallen on Mr. Bush. Plaintiffs, however, elected to do neither of these. And now they wish to have the City of Montgomery pay for their own shortcomings. Here again, such a reliance is unreasonable.

**CONCLUSION**

Plaintiffs' state in their brief that the City's brief "misses the point entirely;" that "[n]othing in the City's submission even attempts to explain why the extension of the service road was necessary." (Plaintiffs' Response, Doc. No. 23, p. 11). Perhaps it is the Plaintiffs who have missed the point. Even a cursory reading of the City's Brief in Support of Motion for Summary Judgment reveals that the requirement emanates solely from the Traffic Access Management Plan, which is quoted from therein and attached thereto in its entirety. Indeed, the central focus of one of the City's arguments is that there was no misrepresentation as is required

7

to maintain a fraud suit; that the requirement to extend the road was, and is, required by the Traffic Access Management Plan.

That Cecil Cork didn't like Merrill Ingram, and the conclusory allegations about what intention the City may have had regarding the extension of the road are of little consequence to the fact that Plaintiffs, as well as their neighbor, were required by a duly adopted piece of legislation to extend their road—whether Cecil Cork liked Merrill Ingram or not, or whether the neighbor chose to erect a billboard or not.

Mr. Ingram was put on notice when he received Stuart Manson's letter that his plan did not comply with the Traffic Access Management Plan. A reasonably prudent person would have investigated further to ascertain whether and to what extent both he and his neighbor were required to connect their developments by road. That letter was sent and received more than two years prior to the filing of the instant action. Had Mr. Ingram performed even a cursory investigation, he would have discovered that the Montgomery Planning Commission, and not the City of Montgomery, had the authority to approve or disapprove his plat; that both he and his neighbor were required to connect by a duly-enacted piece of legislation; and that the placement of a billboard has no effect on the requirements to connect. In short, there can be no fraud for two reasons: first because there was no misrepresentation, and second, because they had no justification in relying on Stuart Manson's representation. Plaintiffs' claims rest upon nothing more than still-unverified false assumptions about why they were required to extend the road, and whether their neighbor would be required to connect to it, false assumptions which Plaintiffs' inexplicably continue to maintain in the face of knowledge to the contrary.

As to Plaintiffs §1983 claim, the plaintiffs failed to avail themselves of their due process right by not submitting their plan to the Planning Commission. Alternatively, there was no

"taking" which would give rise to a due process violation because Plaintiffs never submitted their original plan to the Planning Commission for approval.

    Respectfully submitted,

                                            /s/ Wallace D. Mills_____
                                            WALLACE D. MILLS (MIL090)
                                            Assistant City Attorney

CITY OF MONTGOMERY
Legal Department
Post Office Box 1111
Montgomery, Alabama  36101-1111
(334) 241-2050
(334) 241-2310 – facsimile

## CERTIFICATE OF SERVICE

    I hereby certify that on the 14th day of July, 2008, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system which will send notification of such filing to the following parties or counsel:

                Harold Dean Mooty, Jr, Esq.
                Mooty & Associates PC
                600 Clay Street
                Montgomery, AL 36104

                Randall C. Morgan, Esq.
                Hill Hill Carter Franco Cole & Black
                PO Box 116
                Montgomery, AL 36101-0116

and I hereby certify that I have also mailed by United States Postal Service the document to the above-named non-CM/ECF participants:

                                            /s/ Wallace D. Mills
                                            OF COUNSEL

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | |
|---|---|
| FOREST GLEN, L.L.C. and TIMBER CREEK, L.L.C., <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF MONTGOMERY, and THE WATER WORKS AND SANITARY SEWER BOARD FOR THE CITY OF MONTGOMERY, <br> Defendant | Case No.: 2:07-CV-836 <br><br> **AFFIDAVIT OF KENNETH J. GROVES, JR.** |

STATE OF ALABAMA

COUNTY OF MONTGOMERY

In person appeared before the undersigned officer, duly authorized to administer oaths, Ken J. Groves, Jr., who, after being duly sworn, states under oath as follows:

1. My name is Kenneth J. Groves, Jr. and I am over the age of majority. I have first-hand knowledge of the facts contained herein and am competent to testify thereto.

2. I am the Director of the Planning and Development Department of the City of Montgomery. In that capacity, my department and I serve, in part, in an advisory capacity to the Montgomery Planning Commission on zoning and subdivision regulation issues. My department also serves as a logistical aid to the Commission by providing record-retention services and a depository for the filing of zoning and plat applications.

3. The Planning and Development Department of the City of Montgomery is an agency of the City of Montgomery separate and apart from the Montgomery Planning Commission, and is charged by city ordinance with, among other things, regulating the placement of billboards

within the police jurisdiction of the City of Montgomery through a permitting process. Permits are granted or denied based upon terms and conditions which are wholly unrelated to the regulations governing the platting of subdivisions.

4. Neither the Planning and Development Department, nor, more generally, the City of Montgomery have any control over whether and to what extent subdivision plats are approved or denied by the Montgomery Planning Commission. The Planning Commission exercises exclusive jurisdiction over both the passage of subdivision regulations and the approval of plats based thereon.

5. The permitting of a billboard by the Planning and Controls Department of the City of Montgomery would in no way change or lessen the requirements of the Montgomery Planning Commission embodied in the Traffic Access Management Plan for Taylor Road and Chantilly Parkway.

6. My experience has been that, based upon the requirements of the Traffic Access Management Plan, the first landowner to develop has the opportunity to "stub out" his access road in such a way as he sees fit as long as it provides interconnectivity with neighboring developments. Neighboring Landowners who develop subsequently have more limited options in that they are required to connect to the previously developed parcel at the place where the road has been "stubbed out." This requirement is unaffected by the placement of a billboard in the location where a road would be required if the subservient parcel were to be developed in the future.

7. I have read the above and foregoing affidavit consisting in total of three (3) pages and state that it is true and correct to my present knowledge and information.

8. Further, the affiant saith not.

                                                          Kenneth J. Groves, Jr.

STATE OF ALABAMA

COUNTY OF MONTGOMERY

      I, the undersigned notary public in and for said county in said state, hereby certify that Ken J. Groves, Jr., whose name is signed to the foregoing affidavit, and who is known to me, after being fully informed of the contents of the instrument, signed and executed the same voluntarily after first being duly sworn by me on the date set forth below.

      GIVEN under my hand and official seal, this 14th day of July, 2008.

                                                  NOTARY PUBLIC

                                                  My Commission Expires: 10/16/09

Westlaw.

EXHIBIT
B

Ala.Code 1975 § 11-52-36

C
Code of Alabama Currentness
  Title 11. Counties and Municipal Corporations.
    Subtitle 2. Provisions Applicable to Municipal Corporations Only. (Refs & Annos)
      Chapter 52. Planning, Zoning, and Subdivisions.
        Article 2. . Control of Subdivisions Generally. (Refs & Annos)

→ **§ 11-52-36. Jurisdiction of planning commission as to subdivision plats in territory controlled under Section 11-52-31 exclusive; status of other existing platting or subdivision statutes.**

From and after the time when a planning commission shall have control over subdivisions as provided in Section 11-52-31, the jurisdiction of the planning commission over plats shall be exclusive within the territory under its jurisdiction, and all statutory control over plats or subdivisions of land granted by other statutes shall, insofar as in harmony with the provisions of this article, be deemed transferred to the planning commission of such municipality, and, insofar as said statutes are inconsistent with the provisions of this article, they are hereby repealed.

(Acts 1935, No. 534, p. 1126; Code 1940, T. 37, § 803.)

CASENOTES

**Subsection (b) of § 11-52-30 grants the county the authority to approve plats within the extraterritorial jurisdiction of a municipal planning commission    1**
  1. Subsection (b) of § 11-52-30 grants the county the authority to approve plats within the extraterritorial jurisdiction of a municipal planning commission

**Subsection (b) of § 11-52-30 grants the county the authority to approve plats within the extraterritorial jurisdiction of a municipal planning commission;** but after the plat has been approved, the municipal planning commission has exclusive jurisdiction over development of the subdivision, pursuant to this section and a regulation requiring issuance of building permits falls within the authority of the municipal planning commission to adopt regulations governing the subdivision of land within its jurisdiction. City of Robertsdale v. Baldwin County, 538 So.2d 33 (Ala.Civ.App.1988).

Ala. Code 1975 § 11-52-36, **AL ST § 11-52-36**

Current through Act 2008-270, and Act 2008-280 of the 2008
Regular Session.

Copr © 2008 by State of Alabama. All rights reserved.

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.


EXHIBIT
C

Ala.Code 1975 § 11-52-3

▷
Code of Alabama Currentness
  Title 11. Counties and Municipal Corporations.
    Subtitle 2. Provisions Applicable to Municipal Corporations Only. (Refs & Annos)
      Chapter 52. Planning, Zoning, and Subdivisions.
        Article 1. . General Provisions. (Refs & Annos)

→ **§ 11-52-3. Municipal Planning Commission -- Composition; qualifications, appointment, terms of office, compensation and removal of members; vacancies.**

(a) The commission shall consist of nine members: The mayor, or his or her designee, one of the administrative officials of the municipality selected by the mayor, a member of the council to be selected by it as a member ex officio and six persons who shall be appointed by the mayor, if the mayor is an elective officer, otherwise by the officer as the council may in the ordinance creating the commission designate as the appointing power; provided, that in any Class 1 municipality, the commission shall consist of 16 members: The mayor, one of the administrative officials of the municipality selected by the mayor, two members of the council to be selected by it as members ex officio, and 12 persons who shall be selected by the council. In the event the mayor designates a person to sit in his or her place on the municipal planning commission, the person so appointed shall serve during the term of the mayor, unless the original appointment shall be limited to a term certain of not less than 12 months at time of appointment.

In addition to regular members, the mayor and each of the council members of Class 1 municipalities serving on the commission may each appoint, from the administrative staff of the mayor and council exclusively, a supernumerary member who shall be authorized to be counted for the purpose of determining a quorum, and, while serving, to act with all of the power and authority of a regular member whenever such municipal official is not personally in attendance.

In addition to the regular members, in all cities having populations of not less than 175,000 nor more than 275,000, two supernumerary members shall be appointed to serve on the board at the call of the chair only in the absence of regular members, and while so serving, they shall have and exercise the power and authority of regular members.

(b) All members of the commission shall serve without compensation, and the appointed members shall hold no other municipal office, except, that one of the appointed members may be a member of the zoning board of adjustment or appeals, except in all cities having populations of not less than 175,000 nor more than 275,000, according to the most recent federal decennial census, wherein no member of the commission may be a member of the zoning board of adjustment or appeals and wherein all members of the commission shall be bona fide residents and qualified electors of such cities, except that the 12 appointed members of any commission elected by the council in Class 1 municipalities, under subsection (a) of this section, upon adoption of a resolution by the city council approving Acts 1994, No. 94-672, shall be paid twenty-five dollars ($25) per meeting for each meeting of the commission attended by the members. No member shall be paid more than fifty dollars ($50) in any one month, and any appointed member who is an elected official or an employee of the municipality shall not be eligible to receive the compensation.

(c) The terms of ex officio members shall correspond to their respective official tenures, except that the term of

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

the administrative official selected by the mayor shall terminate with the term of the mayor selecting the member.

The term of each appointed member shall be six years or until the successor takes office, except that the respective terms of five of the members first appointed shall be one, two, three, four, and five years, provided, that in any city having a 16 member commission as provided in subsection (a) of this section, the respective terms of five pairs of the members first appointed by council shall be one, two, three, four, and five years, and provided further, that in all cities having populations of not less than 175,000 nor more than 275,000, the term of each appointed member of the commission shall be for three years.

(d) Members other than the member selected by the council may, after a public hearing, be removed by the mayor for inefficiency, neglect of duty or malfeasance in office, provided, that in any city having a 16 member commission, as provided in subsection (a) of this section, members may, after a public hearing, be removed by the council for any of the above reasons or for continued failure to attend meetings. The council may for like cause remove the member or members selected by it. The mayor or council, as the case may be, shall file a written statement of reasons for such removal.

(e) Vacancies occurring otherwise than through the expiration of term shall be filled for the unexpired term by the mayor in the case of members selected or appointed by him or her, by the council in the case of the member, or other members selected by it and by the appointing power designated by the council in municipalities in which the mayor is not an elective officer.

(Acts 1935, No. 534, p. 1126; Code 1940, T. 37, § 788; Acts 1955, No. 446, p. 1000; Acts 1965, No. 587, p. 1098; Acts 1966, Ex. Sess., No. 429, p. 573; Acts 1971, No. 663, p. 1371; Acts 1983, No. 83-437, p. 618; Acts 1983, No. 83-476, p. 668; Acts 1988, No. 88-215, p. 332; Acts 1994, No. 94-672, § 1.)

HISTORY

Amendment notes:

**The 1994 amendment,** effective May 2, 1994, in subsection (b), in the first sentence deleted "as such" following "shall serve" and added the language beginning with "except that the 12 appointed members," and added the second sentence; in subsection (c), substituted "the member" for "him" and inserted "and" preceding "provided further"; deleted "councilmanic" preceding "member, or other members" in subsection (e); and made nonsubstantive changes.

CROSS REFERENCES

    As to regional planning commissions generally, see § 11-85-1 et seq.

    As to regional planning commissions for comprehensive advisory planning and research, see § 11-85-20 et seq.

    As to comprehensive advisory planning and research by municipal planning commissions, see § 11-85-40.

    As to regional planning and development commissions, see § 11-85-50 et seq.

CASENOTES

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.



Ala.Code 1975 § 11-52-31

C
Code of Alabama Currentness
  Title 11. Counties and Municipal Corporations.
    Subtitle 2. Provisions Applicable to Municipal Corporations Only. (Refs & Annos)
      Chapter 52. Planning, Zoning, and Subdivisions.
        Article 2. . Control of Subdivisions Generally. (Refs & Annos)

→ § 11-52-31. Adoption, publication and certification of subdivision regulations by planning commission; provisions therein as to arrangement, etc., of streets, etc.; provisions as to completion of streets, mains, etc., and approval of subdivision plat.

The planning commission shall adopt regulations governing the subdivision of land within its jurisdiction. Such regulations may provide for the proper arrangement of streets in relation to other existing or planned streets and to the master plan, for adequate and convenient open spaces for traffic, utilities, access of fire-fighting apparatus, recreation, light and air and for the avoidance of congestion of population, including minimum width and area of lots. Such regulations may include provisions as to the extent to which streets and other ways shall be graded and improved and to which water and sewer and other utility mains, piping or other facilities shall be installed as a condition precedent to the approval of the plat. The regulations or practice of the commission may provide for a tentative approval of the plat previous to such installation, but any such tentative approval shall be revocable and shall not be entered on the plat. In lieu of the completion of such improvements and utilities prior to the final approval of the plat, the commission may accept a bond with surety to secure to the municipality the actual construction and installation of such improvements or utilities at a time and according to specifications fixed by or in accordance with the regulations of the commission. The municipality is hereby granted the power to enforce such bond by all appropriate legal and equitable remedies.

All such regulations shall be published as provided by law for the publication of ordinances, and before adoption a public hearing shall be held thereon. A copy thereof shall be certified by the commission to the probate judge of the county in which the municipality and territory are located.

(Acts 1935, No. 534, p. 1126; Code 1940, T. 37, § 798.)

CASENOTES

  Section strictly construed 1
  Authority of commission derived from legislature 2
  Planning commission's bylaws have the same force and effect as properly enacted
    statutes 3
  Subdivision legislation is part of planning legislation 4
  Commission bound by its regulations 5
  Regulation requirements 6
  Requirement of dedication of land or payment of fee in lieu thereof as
    condition to approval of plat 7
  Limitations on authority to require dedication of property 8
  A municipality is responsible for formulating a safer flow of traffic within
    its jurisdiction 9

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.