IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FOREST GLEN, L.L.C., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07-CV-836-WKW |
| | ) | [WO] |
| CITY OF MONTGOMERY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Before the court is a motion for summary judgment (Doc. # 18), filed by Defendant City of Montgomery ("City"). The motion is accompanied by a brief and an evidentiary submission. (Doc. # 19.) Plaintiffs Forest Glen, L.L.C. ("Forest Glen") and Timber Creek, L.L.C. ("Timber Creek") (collectively "Plaintiffs") filed a brief in opposition to the motion with an evidentiary submission (Doc. # 23), to which the City filed a reply (Doc. # 27). The City moves for summary judgment on all claims in the removed complaint. After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that the summary judgment motion is due to be granted as to the federal-law claims alleging due process and equal protection violations and that the state-law claims are due to be remanded to the Circuit Court of Montgomery County, Alabama, pursuant to 28 U.S.C. § 1367(c)(3).

## I. JURISDICTION AND VENUE

The court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, § 1343, and § 1367. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## II. STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). The movant can meet this burden by presenting evidence showing that there is no genuine issue of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex Corp.*, 477 U.S. at 322-23.

Once the moving party has met its burden, "[the] opposing party may not rely merely on . . . . its [] pleadings; rather, it's response must – by affidavits or as otherwise provided in [the] rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A genuine factual dispute exists if a "'reasonable jury could return a verdict for the non-moving party.'"  *Damon v. Fleming Supermarkets, Inc.,* 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  After the nonmoving party has responded, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

### III. FACTS AND PROCEDURAL HISTORY

Viewing the parties' evidentiary submissions in the light most favorable to Plaintiffs, the following are the salient facts.  At all relevant times, Plaintiffs owned commercial property adjoining Chantilly Parkway, a state highway traversing the City's police jurisdiction.  On June 26, 2003, the City's Planning Commission adopted an Access Management Plan to assist traffic regulation on and around Taylor Road and Chantilly Parkway.  (Access Management Plan (Def.'s Evidentiary Submission Summ. J. Ex. A).)  Because Chantilly Parkway is a state highway, the Access Management Plan was fashioned in compliance with the Alabama Department of Transportation's ("ALDOT") rules and regulations.  Two months later, on August 22, 2003, Plaintiffs sold a portion of the subject property to Alan and Ann Bush ("the Bushes").  (Purchase and Sale Agreement (Def.'s Evidentiary Submission Summ. J. Ex. B).)  Less than three months later, on November 10, 2003, Plaintiffs requested preliminary plat approval from the Montgomery Planning Commission for commercial development of the property.  (Tyson Aff. 16 (Def.'s

3

Evidentiary Submission Summ. J. Ex. D Bates No. 1).) Plaintiffs' plat, which included the parcel previously sold to the Bushes, received conditional approval, subject to compliance with applicable subdivision regulations and engineering department requirements. (Tyson Aff. 25.)

In preparation for submission of the final plat, Plaintiffs sent detailed construction drawings to various city departments, including the Traffic Engineering Department. On January 20, 2004, Stuart Manson ("Mr. Manson"), Assistant Director of the Traffic Engineering Department, notified Plaintiffs' engineer, by letter, that the submitted plat was deficient. Correcting one of the deficiencies would require Plaintiffs to extend their service road to the eastern boundary of the property. (Manson Letter (Evidentiary Submission Summ. J. Ex. F; Pls.' Evidentiary Submission Summ. J. Ex. C).)

This service road, which was required for compliance with the Access Management Plan, would require construction across the portion of land which had been sold to the Bushes. Plaintiffs repurchased the land from the Bushes and subsequently submitted a corrected plat for final approval on December 21, 2004. (Tyson Aff. 26.) The corrected plat was approved by the Montgomery Planning Commission, and it was recorded on February 11, 2005. (Plat 1 (Def.'s Evidentiary Submission Summ. J. Ex. C).) On July 2, 2007, the property abutting that of Plaintiffs to the east was annexed into the Town of Pike Road and, therefore, is not subject to the jurisdiction of the City or any of its agencies. This parcel remains undeveloped.

On or about August 8, 2007, Plaintiffs filed the instant suit in the Circuit Court of Montgomery County, Alabama, claiming reckless fraud (Count I), violations of due process and equal protection (Count II), and violation of the Access Management Plan (Count III). Plaintiffs assert that the City fraudulently represented that all landowners within the subdivision would be required to build a service road which, when connected with the service roads of adjoining properties, would create a long service road running parallel to Chantilly Parkway. Plaintiffs claim that they were unduly burdened as compared to other property owners and were treated differently, thereby establishing a violation of the equal protection and due process clauses of the Fourteenth Amendment. Plaintiffs also assert that the City violated the Access Management Plan by not requiring other landowners to build service roads. Plaintiffs seek monetary relief to recover, among other expenses, the expense of building the service road, as well as any diminution in property value which resulted from such construction. (Compl. 7.)

The case was removed to the United States District Court for the Middle District of Alabama on September 14, 2007,[1] on an assertion that Plaintiffs seek "relief recoverable under 42 U.S.C. § 1983 for alleged violation of Plaintiffs' due process and equal protection rights secured by the Fourteenth Amendment to the United States Constitution."[2] (Notice

---

[1] The City and Water Works and Sanitary Sewer Board of the City of Montgomery ("Water Works") jointly removed this case. Water Works is no longer a party to this action.

[2] At no time have Plaintiffs disputed the assertion that their "due process" and "equal protection" claims (*see* Compl. ¶¶ 14-16) are brought pursuant to the Fourteenth Amendment to the United States Constitution.

Removal ¶ 1.) The City has denied any fraud, disparate treatment, or violation of the Access Management Plan, and filed a motion for summary judgment. The motion has been fully briefed and is ready for resolution.

## IV. DISCUSSION

The City moves for summary judgment on Plaintiffs' federal claim, as well as on the state-law claims. The City raises statute of limitations arguments and also attacks the merits of Plaintiffs' claims.[3] Those arguments which pertain to Plaintiffs' equal protection and due process claim (Count II) will be addressed first. The court will conclude by briefly addressing Plaintiffs' state-law claims (Counts I and III).

### A.    **Count II – Due Process and Equal Protection**

Discerning the exact nature of Plaintiffs' due process and equal protection claim is problematic, from a reading of the complaint. Liberally construing the complaint with consideration given to Plaintiffs' summary judgment arguments, the court interprets Count II as containing 42 U.S.C. § 1983 Fourteenth Amendment equal protection and due process claims challenging the constitutionality of the Access Management Plan as applied to Plaintiffs.

#### *1.    Procedural Due Process*

To prevail on a procedural due process claim, a plaintiff must prove the following three elements: (1) the deprivation of a protected property or liberty interest; (2) state action;

---

[3] Because Plaintiffs fail to raise a genuine issue of material fact on the merits of their federal-law claim, as discussed *infra*, the court need not address the City's argument that the claim was filed outside of the statute of limitations applicable to § 1983 actions.

and (3) the absence of constitutionally-adequate process. *Arrington v. Helms*, 438 F.3d 1336, 1347 (11th Cir. 2006) (citing *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).

The City concedes that the constitutionally-protected interest at issue is a property interest and that "the actions of the City . . . constitute state action." (Mot. Summ. J. Br. 10-11.) The City argues that there was not a deprivation of a protected property interest and that Plaintiffs were provided with constitutionally-adequate process. (Mot. Summ. J. Br. 10-11.) Plaintiffs respond to these assertions by lodging a multitude of disjointed complaints, none of which directly addresses the due process claim which they assert in their complaint or rebuts the City's arguments in support of summary judgment. In fact, in Plaintiffs' brief, there is no mention of due process or the Fourteenth Amendment, nor is there a single citation to case law discussing the Fourteenth Amendment. "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). A plaintiff opposing summary judgment cannot rest on his pleadings, *see Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)), and "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned," *Resolution Trust Corp.*, 48 F.3d at 599. Applying these principles, the court finds that the Plaintiffs have abandoned their Fourteenth Amendment due process claim. Alternatively, for the reasons set forth below, the court finds Plaintiffs have failed to raise a genuine issue of material fact as to whether there was a deprivation or "taking" and whether Plaintiffs were afforded constitutionally-adequate process.

### a. Taking

Plaintiffs claim that their constitutional right not to be deprived of property without due process of law, as protected by the Fourteenth Amendment to the United States Constitution, was violated when the City forced them to extend a service road. (Compl. 1-3 & 5-6.) Plaintiffs contend that when Mr. Manson, the Assistant Director of the Traffic Engineering Department, advised them by letter that their initial drawings were deficient, it was the equivalent of instructing them that their plat would not receive final approval from the Montgomery Planning Commission, and they would be unable to build upon their property unless they complied. Essentially, Plaintiffs contend that they were forced to build a service road for no reason. The City, however, contends that Mr. Manson's letter "advising Plaintiffs' engineer that the submitted construction drawings were deficient in that the 'access agreement . . . must be extended along the entire length of lot 1,' was not a taking of [] Plaintiffs' property." (Mot. Summ. J. Br. 11 (quoting Manson Letter).)

Plaintiffs' argument fails. The memorandum of preliminary approval received by Plaintiffs' engineer, Larry Speaks, clearly states that "[a]ll plats are approved subject to compliance with the Subdivision Regulations and Engineering Department requirements." (Prelim. Approval (Def.'s Evidentiary Submission Summ. J. Ex. D Bates No. 25).) The approval was contingent upon meeting the Engineering Department requirements and the Subdivision Regulations, not the approval of the Traffic Engineering Department, Mr. Manson's employer. (Prelim. Approval; Manson Letter.) The ultimate authority to approve or disapprove a proposed plat is vested in the Planning Commission. Ala. Code § 11-52-03

(1975). Because Plaintiffs did not present their preferred plan to the Planning Commission for approval and instead voluntarily chose to re-draw the plat, no "taking" occurred at the hands of the Montgomery Planning Commission.

### b.     Notice and Hearing

Due process is founded upon the notion that prior to a deprivation of life, liberty or property, a party is entitled to "'notice and opportunity for [a] hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). The City contends that Plaintiffs were afforded constitutionally-adequate process at the January 13, 2005 hearing before the Montgomery Planning Commission. (Mot. Summ. J. Br. 11.) The City points to the fact that Plaintiffs had an agent present at that hearing and that the agent could have challenged the requirements that the service road be extended to Plaintiffs' property line.

In any event, Plaintiffs have not disputed the City's argument that, if Plaintiffs believed that a taking would occur if their preferred plat plan was not approved, they could have, but did not, raise that issue at the approval hearing for the final plat, which occurred on January 13, 2005. (Tyson Aff.) The City has presented evidence that Mr. Wesley Fulmer ("Mr. Fulmer"), an engineer, attended the meeting on behalf of Forest Glen. (Tyson Aff.) After Mr. Fulmer answered two questions posed to him by the Commission, the floor was opened for public discussion. Neither Mr. Fulmer nor any other person in attendance raised the issue of the required service road. (Tyson Aff.) Plaintiffs have not demonstrated that

9

their failure to raise this issue at the January 13, 2005 hearing equates with a deprivation of constitutionally-adequate due process. Accordingly, Plaintiffs fail to raise a genuine issue of material fact regarding an essential element of their claim, thereby entitling the City to summary judgment on the § 1983 Fourteenth Amendment claim.

### *2.   Equal Protection*

"It is well settled that unequal application of a facially neutral statute may violate the Equal Protection Clause." *Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996). To establish an equal protection claim, Plaintiffs must show that (1) they were treated differently than others who were similarly situated and (2) the City purposefully applied an otherwise neutral statute in a way which discriminated against Plaintiffs. *See id.*

Focusing on the first *Strickland* element, the City argues that Plaintiffs have not submitted evidence of a similarly situated comparator (Mot. Summ. J. Br. 13) or differential treatment (Mot. Summ. J. Br. 12). Plaintiffs point to the "adjoining property," *e.g.*, the "Georgetown Development," arguing that the City did not require its owner to extend the service road (Opp'n to Summ. J. 7, 9), but the City argues that this property is not "similarly situated . . . because the City . . . has not had the opportunity to enforce its regulations against this [adjoining property]" and will not because this adjoining property has been annexed into the Town of Pike Road (Mot. Summ. J. Br. 13). For the reasons to follow, the court agrees with the City.

In *Campbell v. Rainbow City, Alabama*, 434 F.3d 1306 (11th Cir. 2006), a zoning case, the plaintiffs claimed that the city denied their application for tentative approval for the

10

development of an apartment complex, but approved other applications for similar developments, and that the city's dissimilar treatment violated the plaintiffs' equal protection rights guaranteed by the Fourteenth Amendment. *Id.* at 1309. The Eleventh Circuit reiterated that "'[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause,'" *id*. at 1314 (quoting *E&T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987)), and that a meaningful comparison between the plaintiff and the proposed comparator "requires some specificity,"[4] *id.* Moreover, to be deemed similarly situated, the comparator "must be *prima facie* identical in all relevant respects." *Id.* (citing *Strickland*, 74 F.3d at 264-65). In light of these principles, the Eleventh Circuit explained that "[t]he analysis of [p]laintiffs' equal protection claim require[d] a finding that there were developments which were similarly situated to the [plaintiffs'] proposed development," *id*., and that, to satisfy the similarly-situated requirement, the plaintiffs had to demonstrate, among other things, that "the other development sought and received tentative approval of its site from the City," *id.* at 1315. Such evidence, however, is lacking here.

As the standard in *Campbell* suggests, simply because property abuts that of Plaintiffs' does not make that neighboring property similarly situated to Plaintiffs'. The Access Management Plan, which governs the placement of service roads in compliance with the

---

[4] The Eleventh Circuit began its analysis with a caution that "federal courts should be disinclined to 'sit as a zoning board of review,' and as a 'general rule,' zoning decisions 'will not usually be found by a federal court to implicate constitutional guarantees.'" *Campbell*, 434 F.3d at 1313 (quoting *Greenbriar Villiage, L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1262 (11th Cir. 2003) (per curiam)). It recognized, "[n]evertheless" that "the Equal Protection Clause requires government entities to treat similarly situated people alike," *id.*, and that zoning decisions are not immune from that clause's guarantee.

ALDOT requirements, becomes relevant at the point when a party subject to the City's jurisdiction seeks approval of a final plat from the Planning Commission. In other words, a property owner is not subject to the Access Management Plan (1) unless he is subject to the jurisdiction of the City Planning Commission *and* (2) until he seeks to subdivide or otherwise develop his property. Neither fact is present in this case; the adjoining property is in another municipal jurisdiction, and no development has occurred on that property. Moreover, Plaintiffs have not disputed the City's factual assertion that Chantilly Parkway access is strictly within the jurisdiction of the State of Alabama Department of Transportation, not the City's.

Plaintiffs present no genuine issue of material fact concerning the existence of a similarly-situated comparator. Without a similarly situated comparator, Plaintiffs cannot say that they were treated "differently." For these reasons, the City is entitled to summary judgment on Plaintiffs' § 1983 Fourteenth Amendment equal protection claim.

**B.     Counts I and III: Reckless Fraud and Violation of Access Management Plan**

In Counts I and III, Plaintiffs bring state-law claims for reckless fraud and violation of the Access Management Plan. Because the court finds that the City is entitled to summary judgment on Count II, which is the only federal-law claim presented, no claims over which the court has original jurisdiction remain. In its discretion, the court declines to exercise supplemental jurisdiction over the state-law claims in Counts I and III. Those claims will be remanded to the Circuit Court of Montgomery County, Alabama, pursuant to 28 U.S.C. § 1367(c)(3). *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d

1092, 1123 (11th Cir. 2005) ("Because this case was originally filed in state court and removed to federal court pursuant to 28 U.S.C. § 1441, if the district court declines to continue to exercise supplemental jurisdiction, [the] remaining claim[s] should be remanded to state court.").

## V.  CONCLUSION

For the foregoing reasons, it is ORDERED that:

1. The City's Motion for Summary Judgment (Doc. # 18) is GRANTED as to Count II of the complaint, but otherwise is DENIED.

2. The state-law claims in Counts I and III are REMANDED to the Circuit Court of Montgomery County, Alabama, pursuant to 28 U.S.C. § 1367(c)(3).

3. The Clerk of the Court is DIRECTED to take appropriate steps to effect the remand.

An appropriate judgment will be entered.

DONE this 13th day of February, 2009.

/s/  W.  Keith Watkins
UNITED STATES DISTRICT JUDGE